UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
BETSABE MONTOYA and BLANCHE PESCE,
individually and on behalf of all others
similarly situated,

               Plaintiffs,

       - against -

ING LIFE INSURANCE AND ANNUITY COMPANY, a
Connecticut corporation; NEW YORK STATE
UNITED TEACHERS; NEW YORK STATE UNITED
TEACHERS MEMBER BENEFITS TRUST, a New York
not-for-profit trust; IVAN TIGER, trustee
of New York State United Teachers Member
Benefits Trust; RODERICK SHERMAN, trustee
of New York State United Teachers Member
Benefits Trust; LEE CUTLER, trustee of New
York State United Teachers Member Benefits
Trust; KATHLEEN M. DONAHUE, trustee of New
York State United Teachers Member Benefits
Trust; RICHARD C. IANNUZZI, trustee of New
York State United Teachers Member Benefits
Trust; ALAN B. LUBIN, trustee of New York
State United Teachers Member Benefits
Trust; JOSEPH P. MCLAUGHLIN, trustee of New
York State United Teachers Member Benefits
Trust; ARTHUR PEPPER, trustee of New York
State United Teachers Member Benefits
Trust; ELLEN SCHULER MAUK, trustee of New
York State United Teachers Member Benefits
Trust; GARY TERWILLIGER, trustee of New
York State United Teachers Member Benefits
Trust; JOHN DOE DEFENDANTS 1-99, and JANE
DOE DEFENDANTS 1-99, trustees of New York
State United Teachers Member Benefits
Trust,

             Defendants.
----------------------------------------X

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/31/09

**MEMORANDUM and**
**ORDER**

07 Civ. 2574
(NRB)

1

Plaintiffs Betsabe Montoya and Blanche Pesce ("plaintiffs") filed this class action against defendants ING Life Insurance and Annuity Company ("ING"), New York State United Teachers ("NYSUT"), New York State United Teachers Member Benefits Trust ("NYSUT Trust"), Ivan Tiger, Roderick Sherman, Lee Cutler, Kathleen Donahue, Richard Iannuzzi, Alan Lubin, Joseph McLaughlin, Arthur Pepper, Ellen Schuler Mauk, and Gary Terwilliger (collectively, "NYSUT Trust Trustees"), alleging four causes of action under the Employee Retirement Income Security Act of 1974 (ERISA):

(1) failure to prudently and loyally manage plan assets in violation of section 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1);

(2) failure to provide complete and accurate information in violation of section 404(a)(1) of ERISA;

(3) engaging in transactions prohibited under sections 406(a)(1), 406(b)(1) and 406(b)(3) of ERISA, 29 U.S.C. §§ 1106(a)(1), 1106(b)(1) and 1106(b)(3); and

(4) breach of duty by a co-fiduciary under section 405(a) of ERISA, 29 U.S.C. § 1105(a).

Presently before the court is defendants' motion to dismiss plaintiffs' complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Because the sole ground plaintiffs assert for subject matter jurisdiction is federal question jurisdiction based on the ERISA claims and because we find that the retirement plan at issue is a "governmental plan" exempt from ERISA pursuant to 29 U.S.C. § 1003(b)(1), we grant defendants' motion.

## BACKGROUND[1,2]

Plaintiff Betsabe Montoya ("Montoya") is a teacher in the Long Beach School District ("School District") and has taught middle school students in that District for twenty years. (Pls.' Memo. at 2.) Plaintiff Blanche Pesce ("Pesce") is a retired teacher who taught French and Spanish in the School District from 1992 until 2006. (Id.;

---

[1] When, as here, "a court reviews a complaint under a factual attack [on the existence of federal subject matter jurisdiction], the allegations have no presumptive truthfulness, and the court that must weigh the evidence has discretion to allow affidavits [and] documents . . . to resolve disputed jurisdictional facts." 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 12.30[4] (3d ed. 2008); see Discussion Section A, infra.

[2] The facts in this section are drawn from the following: the Complaint ("Compl."); Corrected Memorandum of Law in Support of Plaintiffs' Opposition to Defendants' Motions to Dismiss Plaintiffs' Complaint ("Pls.' Memo."); Declaration of Blanche Pesce, Exhibit 2 to Pls.' Memo. ("Pesce Decl."); Deposition of Frank Ruggiero, Exhibit 8 to Karin Swope Declaration ("Ruggiero Dep."); Memorandum of Law in Support of ING's Motion to Dismiss the Complaint ("ING Memo."); and Supplemental Declaration of Mark E. Jackowitz, Regional Vice President at ING ("Jackowitz Supp. Decl.").

3

Pesce Decl. ¶ 3.)    Montoya and Pesce are members of defendant New York State United Teachers, which is an employee organization comprised of approximately 575,000 people who work in, or are retired from, New York's schools, colleges, and healthcare facilities.    (Compl. ¶ 23.)    Both Montoya (since 1996) and Pesce (since 1994) have participated in a retirement savings program, the Opportunity Plus Program (the "OPP"), which permits the School District to buy annuities on their behalf from defendant ING on a tax-deferred basis pursuant to Internal Revenue Code ("IRC") section 403(b), 26 U.S.C. § 403(b). (Compl. ¶¶ 21, 22; ING Memo. at 3.)

Plaintiffs allege that defendants are liable under ERISA because NYSUT endorsed the OPP in exchange for "millions of dollars in kickback payments" from ING. (Pls.' Memo. at 1.)    Defendants maintain that the OPP is a "governmental plan" as defined in 29 U.S.C. § 1002(32), and is therefore exempt from Title I of ERISA.    29 U.S.C. § 1003(b)(1).

### A.    The Plan

In 1971, the Long Beach School District first applied for, and was issued, a group variable annuity contract by Participating Annuity Life Insurance Company ("PALIC"), so

4

that teachers in the District could purchase tax-deferred section 403(b) annuities. (ING Memo. at 7.) In 1981, the School District secured a new group annuity contract from the Aetna Life Insurance and Annuity Company ("ALIAC"), the successor company to PALIC. (Id.) Eight years later, in 1989, ALIAC began offering the Opportunity Plus Program to replace existing 403(b) annuity contracts between ALIAC and individual school districts. (Id. at 7-8.) The Long Beach School District entered into a contract with ALIAC -- which was purchased by ING in 2002 -- in August, 1989 to offer the OPP to its teachers. (Id. at 8.)

Plaintiffs allege that beginning in 1988 -- a year before the School District signed the OPP contract -- NYSUT played a significant role in both the selection and design of the OPP, in collaboration with ALIAC. (Pls.' Memo. at 6-7.) NYSUT and ALIAC entered into a "Marketing and Administration Agreement" in December, 1988 that contemplates the development of a 403(b) program that would be endorsed by NYSUT. (Id., Ex. 15 at 1.) The OPP prospectus, dated February 15, 1989, states that the OPP was endorsed both by NYSUT and NYSUT Trust. (Id., Ex. 16 at 1.) Plaintiffs allege that NYSUT had an "ongoing role . . . . in overseeing" the OPP, which included sending communications to, and managing a grievance process for,

5

OPP participants.     (Id. at 6, 7.)     Plaintiffs do not
contest that NYSUT Trust's endorsement of the OPP expired
on December 31, 2006 and was not renewed.   (ING Memo. at
9.)   The OPP did not dissolve with the NYSUT Trust
endorsement, however, and the School District continues to
offer the OPP to its teachers, along with other tax-
sheltered annuity programs ("TSAs") from eight other
companies.  (Id.; Ruggiero Dep. 96:2-9.)

Pesce first enrolled in the OPP in 1994 and Montoya,
in 1996.   Both plaintiffs entered into salary reduction
agreements with the School District that authorized the
School District to reduce their salaries and pay the amount
of the reduction to ING in exchange for annuity products.
(ING Memo. at 8.)   Pursuant to these agreements, the School
District wrote checks directly to ING, and at no time were
these funds in the possession of Montoya or Pesce.   (Id.;
Jackowitz Supp. Decl., Exs. F, G.)

While teachers' OPP accounts were generally funded via
salary reduction agreements, in 2004 the School District
negotiated a Memorandum of Agreement (the "MOA") with the
Long Beach Classroom Teachers' Association (a local union)
that provided for the deposit of funds for unused sick
leave into retiring teachers' OPP accounts at ING.   (Pls.'
Memo. at 13-14; ING Memo. at 9.)   Under the MOA, individual

6

teachers did not have the option of taking the accrued sick leave payment in the form of cash, rather than have the School District pay the funds directly to the teachers' OPP accounts at ING. (Pls.' Memo. at 13-14.)

The School District's involvement in the OPP was not limited to negotiating the 2004 MOA, paying ING pursuant to salary deferral agreements and the MOA, and keeping records of those payments. When a new hire reported to work, the School District would provide him with brochures on all available TSAs, of which the OPP was one. (Ruggiero Dep. 63:22-64:9.) In addition, the School District monitored the vendors of the TSAs, ensuring that they were not "too aggressive within the buildings going after people." (Id. 39:3-7.) Finally, in 2007 the School District entered into a contract with Omni Financial Group, Inc. ("Omni") to provide tax-compliance services and to draft a written plan document for the OPP. (Id. 87:2-88:23.)

## B. Procedural History

Plaintiffs filed their complaint on March 28, 2007. The Court ordered the parties to engage in jurisdictional discovery. Briefing on the instant motion was complete on October 25, 2008. This Court held oral argument on July 2, 2009.

7

## DISCUSSION

### A.    Standard of Review

"In a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the defendant may challenge either the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both." Robinson v. Gov't of Malaysia, 269 F.3d 133, 140 (2d Cir. 2001) (citations omitted). Where, as here, the challenge is a factual one, "the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." McCarthy v. U.S., 850 F.2d 558, 560 (9th Cir. 1988), cert. denied, 489 U.S. 1052 (1989) (citing Land v. Dollar, 330 U.S. 731 (1947)). When a court considers a factual challenge to subject matter jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987) (internal quotations and citations omitted); see also 2 J. Moore et al., Moore's Federal Practice § 12.30[4] p. 12-46 (3d ed. 2007).

**B.    The Section 2510.3-2(f) Safe Harbor Does Not Apply to Section 1002(32) Governmental Plans**

Defendants maintain that the OPP is exempt from the liability provisions in Title I of ERISA because it is a "governmental plan."   29 U.S.C. § 1003(b) ("[t]he provisions of this subchapter shall not apply to any employee benefit plan if -- (1) such plan is a governmental plan (as defined in section 1002(32) of this title) . . . ."   A "governmental plan" is defined as "a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing."   29 U.S.C. § 1002(32).

While there is no dispute that a "governmental plan" is exempt from ERISA oversight, plaintiffs argue that a regulatory safe harbor provision created by the Department of Labor, 29 C.F.R. § 2510.3-2(f), governs whether an employer has "established or maintained" a plan and that such a determination must precede a court's consideration of whether or not a plan is governmental.  (Pls.' Memo. at 23-28.)   This safe harbor permits an employer to escape ERISA liability if it limits its involvement in an employee pension benefit plan to a set of activities listed in the

9

safe harbor (because its limited involvement does not constitute activity sufficient for it to have "established or maintained" the plan). On plaintiffs' theory, if the School District limited its involvement with the OPP to the activities listed in the safe harbor provision, it did not "establish[] or maintain[]" the OPP under 29 U.S.C. § 1002(32), which would cause the OPP not to be a "governmental plan."

In response, defendants argue that the section 2510.3-2(f) safe harbor applies only to the plans of private employers. (ING Memo. 22-23.) Because both the Internal Revenue Service ("IRS") and the Department of Labor ("DOL") have adopted defendants' interpretation of the safe harbor, we find plaintiffs' argument on this point unpersuasive.

In its preamble to section 2510.3-2(f), the Department of Labor expressly stated that "[c]ertain 'governmental plans' defined in section 3(32) of the [Employee Retirement Income Security] Act, and 'church plans' defined in section 3(33) of the Act are not affected by this regulation because they are excepted from the requirements of Title I of the Act by virtue of section 4(b)(1) and (2) of the Act." 44 Fed. Reg. 23525 n.1 (Apr. 20, 1979) (to be

10

codified at 29 C.F.R. pt. 2510) (emphasis added).[3] Importantly, this Department of Labor interpretation of its own regulation is afforded even more deference than that which courts give agency interpretations of statutes. Udall v. Tallman, 380 U.S. 1, 16 (1965) ("When the construction of an administrative regulation rather than a statute is in issue, deference is even more clearly in order.").

The IRS came to the same conclusion as the DOL in 2007 after consulting directly with the DOL on "the interaction between Title I of ERISA and section 403(b) of the Internal Revenue Code" as it considered new regulations governing section 403(b) annuities. This consultation:

> focused on whether the requirements imposed on employers in these regulations would exceed the scope of the Department of Labor's safe harbor regulation at 29 CFR 2510.3-2(f) and result in all section 403(b) programs sponsored by tax exempt employers (other than governmental plans and certain church plans) falling under the purview of ERISA.

---

[3] Plaintiffs cite DOL Advisory Opinion 79-36A, 1979 WL 6974 (June 11, 1979) (the "Opinion"), stating that it "appl[ies] ERISA safe harbor to determine specifically if a plan for school district employees is a governmental plan under ERISA § 3(32)." This characterization is inaccurate, for the Opinion deems the plan at issue to be a "governmental plan" without even purporting to apply the section 2510.3-2(f) safe harbor. Id. at *2. The Opinion mentions the section 2510.3-2(f) safe harbor -- as well as a separate safe harbor -- only as it discusses different contexts in which the DOL has offered interpretations of the language, "established or maintained." Id. at *3.

11

Revised Regulations Concerning Section 403(b) Tax-Sheltered
Annuity Contracts, 72 Fed. Reg. 41128, 41136 (July 26,
2007) (emphasis added).    Consistent with the views of the
IRS  and  DOL  that  the  safe  harbor  is  inapplicable  to
governmental plans, the regulations contain no discussion
of the degree of governmental activity which would place a
governmental plan inside or outside the safe harbor.    The
preamble to the released section 403(b) regulations goes on
to explain that:

> [G]overnmental  plans  and  church  plans  are
> generally excluded from coverage under Title I of
> ERISA.     ERISA   section   4(b)(1)   and   (2).
> Therefore, contracts purchased or provided under
> a  program  that  is  either  a  "governmental  plan"
> under section 3(32) of ERISA or a "church plan"
> under section 3(33) of ERISA are not generally
> covered under Title I.    However, section 403(b)
> of the Internal Revenue Code is also available
> with respect to contracts purchased or provided
> by employers for employees of a section 501(c)(3)
> organization, and many programs for the purchase
> of  section  403(b)  contracts  offered  by  such
> employers are covered under Title I of ERISA as
> part of an "employee pension benefit plan" within
> the meaning of section 3(2)(A) of ERISA.    The
> Department of Labor promulgated a regulation in
> 1975,    29    CFR    2510.3-2(f),    describing
> circumstances under which an employer's program
> for the purchase of section 403(b) contracts for
> its employees, which is not otherwise excluded
> from  coverage  under  Title  I,  will  not  be
> considered to constitute the establishment  or
> maintenance of an "employee pension benefit plan"
> under Title I of ERISA.

Id.  at  41136-37  (emphases  added).    These  excerpts
demonstrate that the IRS -- in consultation with the DOL --

12

concluded that the 2510.3-2(f) safe harbor applies to the plans of 501(c)(3) organizations but not to governmental plans, the same interpretation that the DOL provided in its 1979 preamble to the section 2510.3-2(f) safe harbor.[4] Because both the DOL and IRS interpret the section 2510.3-2(f) safe harbor as inapplicable to the plans of public employers, we adopt that same interpretation of the safe harbor.    Therefore, the section 2510.3-2(f) safe harbor is irrelevant to the determination of whether the OPP is a "governmental plan" under 29 U.S.C. § 1002(32).

## C.    The OPP is a "Governmental Plan" under 29 U.S.C. § 1002(32)

We now turn to a discussion of whether the OPP is a "governmental plan" under 29 U.S.C. § 1002(32), as defendants argue, and is therefore exempt from the liability provisions in Title I of ERISA.    29 U.S.C. § 1003(b)(1).    As noted above, section 1002(32) defines a "governmental plan" to be "a plan established or maintained

---

[4]    Plaintiffs cite to two cases from different jurisdictions that apply the section 2510.3-2(f) safe harbor to governmental plans, Otto v. Variable Annuity Life Ins., 814 F.2d 1127 (7th Cir. 1986), and Daniels-Hall v. Nat'l Educ. Assoc., No. C 07-5339RBL, 2008 WL 2179530 (W.D. Wash. May 23, 2008).    Neither of these opinions references the DOL's 1979 preamble to the 2510.3-2(f) safe harbor or the IRS's 2007 preamble to the revised section 403(b) regulations.

In this Circuit, however, panels have twice affirmed district court holdings that pension benefit plans were "governmental plans" under 29 U.S.C. § 1002(32) without an application of (or even mention of) the 2510.3-2(f) safe harbor.    Roy v. Teachers Ins. and Annuity Assoc., 878 F.2d 47 (2d Cir. 1989); Rose v. Long Island R.R. Pension Plan, 828 F.2d 910 (2d Cir. 1987).

for its employees" by a governmental body or instrumentality.  The Second Circuit has held that a school district is an entity that can "establish or maintain" a governmental plan.  Gualandi v. Adams, 385 F.3d 236, 238 (2d Cir. 2004); see also Feinstein v. Lewis, 477 F. Supp. 1256, 1260 (S.D.N.Y. 1979) ("the towns and school districts involved herein did nevertheless 'establish' the Plans"). Consistent with the plain language of the statute, a plan is a government plan if it is either established or maintained by a governmental body or instrumentality. Gualandi, 385 F.3d at 242; Roy, 878 F.2d at 50.

As is set forth below, we find that the School District "established or maintained" the OPP -- and that the OPP is thus a "governmental plan" exempt from Title I of ERISA -- based on 1) congressional intent in enacting ERISA; 2) an analysis of the School District's involvement with the OPP under Second Circuit precedent and relevant DOL opinion letters; and 3) the tension between ERISA law and IRC section 403(b) that would result from a contrary holding.

## 1. Congressional Intent

Congress included an exemption for governmental plans in ERISA both because of federalism concerns, Feinstein,

14

477 F. Supp. at 1261, and because Congress was specifically seeking "to curb abuses which were rampant in the private pension system." Roy, 878 F.2d at 49 (emphasis in original). Congress expressly considered including state and local government plans under ERISA but decided that "all government plans would be exempted from regulation for the time being and set aside for further study," in part due to the lack of "adequate information respecting benefit plans in the public sector." Gualandi, 385 F.3d at 243 (citations omitted). Based in part on the numerous references to "public employee plans," "public sector plans" and "State and local public employee funds" in ERISA's legislative history, Judge Werker, in Feinstein, concluded that "Congress, in exempting governmental plans, was concerned more with the governmental nature of public employees and public employers than with the details of how a plan was established or maintained." 477 F. Supp. at 1262 (quoted with approval in Roy, 878 F.2d at 50, and Rose, 828 F.2d at 920).

In the instant case, the Opportunity Plus Program was limited to the public employees (the teachers) of a public employer (the School District). The federalism concerns that motivated Congress to craft the "governmental plan" exemption support a finding that the pension plan of this

15

local government entity is exempt from federal scrutiny under ERISA. Furthermore, that Congress enacted ERISA specifically to address abuses in the private pension sector also counsels against subjecting this public pension plan to liability under ERISA. Because, as the Second Circuit has affirmed, Congress' focus in exempting governmental plans was the "governmental nature of public employees and public employers" and not "the details of how a plan was established or maintained," exempting the OPP from Title I of ERISA is consistent with congressional intent in enacting ERISA. Roy, 878 F.2d at 50; Rose, 828 F.2d at 920.

## 2. The School District Established the OPP

Defendants argue that the School District "established" the OPP under 29 U.S.C. § 1002(32) because it is the sole source of funding for the OPP. We agree.

The Second Circuit has adopted "a broad reading of the term 'established.'" Rose, 828 F.2d at 921; Gualandi, 385 F.3d at 243 ("we are convinced that Congress aimed for a broad definition of the term 'establish'"). In Gualandi, the court considered whether the "governmental plan" exemption encompassed an employee benefit plan set up and administered by a teachers' labor union using funds from a

16

public school district.  Id. at 239.  Under this plan, the
school district gave funds to the labor union, which --
pursuant to an agreement with the school district -- used
the funds to reimburse public school teachers for out-of-
pocket medical expenses.  Id. at 241.  The Gualandi court
affirmed the district court's finding that the school
district had exclusively funded the benefit plan and held
that such exclusive funding made the plan an exempt
"governmental plan" under 29 U.S.C. § 1002(32).  Thus,
despite the fact that the union was the entity that
directly moved funds into the benefit plan, id. at 240, the
court found that the school district had "established" the
plan under 29 U.S.C. § 1002(32).

The Second Circuit's broad construal of "established"
in Gualandi is consistent with its earlier interpretation
of that term in Rose.  In Rose, the court addressed whether
the pension plan of a private railroad was "established" by
the Metropolitan Transit Authority ("MTA") when the MTA
bought the private railroad and wholly amended, but did not
terminate, the plan.  828 F.2d at 920-21.  The court held
that the MTA had "established" the plan, even though the
plan had been in existence for over thirty years at the
time of the MTA's purchase of the railroad.  Id. at 920.

17

Turning to the instant case, to determine whether the OPP was "established" by the School District under 29 U.S.C. § 1002(32), we examine how that plan was funded. The OPP has been funded by direct payments from the School District either 1) pursuant to salary reduction agreements or 2) based on the 2004 MOA regarding accumulated vacation pay. Thus, unlike the school district in Gualandi, the Long Beach School District writes checks directly to the OPP, without giving the funds to a union intermediary. And unlike the plan in Rose, the OPP was created in its initial form when the School District entered into a contract with the ING subsidiary in 1989. The Second Circuit's broad construal of "established" would certainly appear to encompass the School District's creation and direct funding of the OPP.

Plaintiffs nonetheless attempt to distinguish Gualandi by claiming that the funds that the School District contributed to the OPP pursuant to salary reduction agreements should be considered employee contributions rather than governmental funding. (Pls.' Memo. at 16-17.) However, the Gualandi court itself cited with approval DOL Advisory Opinion 99-15A, 1999 ERISA LEXIS 20 (Nov. 19, 1999), which draws no distinction between contributions made by the governmental employer and those made by

18

employees: "The term 'governmental plan' also includes a plan administered by an 'employee organization' . . . . provided that the plan is funded exclusively by the government and by the government's employees . . . ."[5]  Id. at *6 (emphasis added); Gualandi, 385 F.3d at 243.

Moreover, even if section 1002(32) were to treat employer and employee contributions differently, contributions by the School District pursuant to salary reduction agreements are in fact employer contributions. See Canisius College v. United States, 799 F.2d 18, 20 (2d Cir. 1986) ("[u]nder Treasury Department regulations, the amounts contributed by Canisius to retirement annuities in accordance with this salary reduction plan were considered contributions made by the employer for section 403(b) purposes"). For these reasons we find plaintiffs' argument that the School District did not fund the OPP unpersuasive.

In sum, we conclude that the School District "established" the OPP, 29 U.S.C. § 1002(32), under the Second Circuit's broad construal of that term, because the School District instituted the OPP via contract in 1989 and was the sole source of funding for the OPP.

_____

[5] While DOL advisory opinions are not binding, the DOL is "nonetheless a body of experience and informed judgment to which courts and litigants may properly resort for guidance and we have often relied on DOL Opinion Letters for their persuasive value." Gualandi, 385 F.3d at 243 (internal quotations omitted).

### 3. A Contrary Holding Would Create Tension Between 29 U.S.C. § 1002(32) and IRC § 403(b)

As discussed, the parties disagree as to whether NYSUT or the School District established the OPP. In addition to the ERISA issue resolved above, we also note that the answer to the establishment question has considerable significance for tax purposes. Plaintiffs claim that NYSUT and NYSUT Trust, rather than the School District, "established and maintained" the OPP. (Compl. ¶ 5.) Defendants argue that, on the contrary, the "[Internal Revenue Code] and its implementing regulations provide that only an 'eligible employer,' not an employee organization, such as NYSUT Trust, can establish a 403(b) plan." (Reply Memorandum of Law in Further Support of the NYSUT Defendants' Motion to Dismiss Plaintiffs' Complaint ("NYSUT Reply Memo.") at 6.)

Under section 403(b) of the Internal Revenue Code, to qualify for tax deferral, an "annuity contract" must be purchased:

(i) for an employee by an employer described in section 501(c)(3) which is exempt from tax under section 501(a),

(ii) for an employee . . . . who performs services for an educational organization . . . ., by an employer which is a State, a political subdivision of a State, or an agency or instrumentality of any one or more of the foregoing, or

20

(iii) for [a minister] . . . .

26 U.S.C. § 403(b)(1)(A). The implementing regulations of
section 403(b) are consistent with section 403(b) itself,
in that they require that an "eligible employer" contribute
amounts "for the purchase of an annuity contract," 26
C.F.R. § 1.403(b)-3, and define "eligible employer" to
include "[a] State, but only with respect to an employee of
the State performing services for a public school," but not
an employee organization, such as NYSUT and NYSUT Trust, 26
C.F.R. § 1.403(b)-2(b)(8)(i).

Internal Revenue Code section 403(b) thus requires
that employers, and not employee organizations, have a
central role in setting up section 403(b) plans. If this
Court were to hold, as urged by plaintiffs, that the School
District did not "establish or maintain" the OPP under 29
U.S.C. § 1002(32), such a holding would call into question
the validity of the tax benefits plaintiffs have received
over the years by participating in the OPP. While one
district court has gone so far as to hold that "employee
organizations simply cannot, as a matter of law, establish
or maintain § 403(b) annuity plans," we are content merely
to note that plaintiffs' attempt to minimize the School
District's involvement in the OPP puts plaintiffs'

21

substantial tax benefits at risk.   Daniels-Hall v. Nat'l
Educ. Ass'n, No. C 07-5339RBL, 2008 WL 2179530, at *11
(W.D. Wash. May 23, 2008).

**CONCLUSION**

For the reasons set forth above, defendants' motion to
dismiss for lack of subject matter jurisdiction pursuant to
Fed. R. Civ. P. 12(b)(1) is granted.   The Clerk of the
Court is respectfully directed to close this case.

**IT IS SO ORDERED.**

Dated:   New York, New York
         August 31, 2009

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

22

Copies of the foregoing Order have been mailed on this date to the following:

Attorneys for Plaintiffs
David S. Preminger, Esq.
Derek W. Loeser, Esq.
Karin B. Swope, Esq.
Keller Rohrback L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052

Jeffrey C. Engerman, Esq.
Law Offices of Jeffrey C. Engerman, P.C.
12400 Wilshire Blvd., 7th Floor
Los Angeles, CA 90025

Attorneys for NYSUT Defendants
Lars C. Golumbic, Esq.
Groom Law Group
1701 Pennsylvania Ave., N.W.
Washington, D.C. 20006

Attorneys for ING
Markham R. Leventhal, Esq.
Jorden Burt LLP
1025 Thomas Jefferson St., N.W.
Washington, D.C. 20007-5208